# CASES

IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA 1871.

## Pennsylvania Railroad Co. *versus* Keller *et ux.*

1. The Act of March 4th 1852 authorizes a change of names, if it be made apparent to the court that there was a mistake in instituting the suit.

2. An action by a mother for negligence in causing the death of her son above age can be maintained, if the family relation existed between them at the time of his death and there were reasonable grounds to expect pecuniary advantage from the continuance of the relation.

3. In an action by a mother for negligence causing death of her son, the court charged: "that it is not necessary, to enable the plaintiff to recover. damages for the death of her son, that the evidence should show the *precise* amount of the damages in dollars and cents. But the evidence must clearly show that the plaintiff did actually sustain damages—pecuniary damages or loss." *Held* to be correct.

4. The purpose of the Act of April 4th 1868, is to *declare* what the courts had said was the construction of the Act of April 26th 1855, that compensation for loss of life was to be measured by the loss thereof to the parties entitled to compensation.

5. Life, by law has a value for the loss of which the survivors have a right to be compensated in view of its circumstances.

6. In estimating the value of life, that personal exertions may ever be required of its possessor or his possible want of capacity are not to be taken into account.

7. The sound sense of the jury must ascertain the pecuniary value from the evidence in the case as best they may.

8. To recover damages for death by negligence it is not necessary that the next of kin should have had a legal claim on the deceased for support.

9. The Acts of 1855 and 1868 are *in pari materiâ*, and both make a system.

10. Pennsylvania Railroad *v.* Adams, 5 P. F. Smith 499, approved.

(300)

January 3d 1871.    Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ.    SHARSWOOD, J., at Nisi Prius.

Certificate from Nisi Prius, No. 65, to January Term 1866.

This was an action on the case brought September 18th 1865, by Louisa Anker against the Pennsylvania Railroad Company for negligence resulting in the death of her son, Herman Anker, whilst a passenger on the defendants' cars.

The declaration, filed March 31st 1866, after setting out that the deceased had been a passenger on the defendants' cars, and had lost his life by their negligence, averred that he died leaving no father, and that she being his mother was entitled to recover damages for his death, whereby she was deprived of her means of support from his labor and earnings, &c.    On the 9th of December 1867, the plaintiff was permitted to amend the record by changing her name to Louisa Keller, and adding the name of her husband, Joseph Keller, as co-plaintiff.    Another declaration was afterwards filed so as to conform to the change in the record.

On the trial, December 20th 1869, before Williams, J., the plaintiff testified to her relationship to the deceased; that he had enlisted in June 1861 in the army of the United States for the suppression of the rebellion; that he continued in the army until about December 1863, when he re-enlisted on the field; that he had sent her money several times whilst in the army.    On cross-examination, she testified that he afterwards lost a leg, and that she frequently sent him money whilst in the hospital; that her first husband, the father of the deceased, had died in 1843, and she had been married again in 1845; that she had received several hundred dollars from the government as a pension on account of her son's death; that she had made the application in the name of Anker.    She gave evidence that her son had been on a train of the defendants' cars on the 21st of September 1864, and had been killed in the cars by a collision with another train. She gave other evidence to show that the deceased had assisted in her support; also that he was about twenty-four years old at his death.

The defendants gave in evidence the application of Mrs. Keller for a pension; it was dated August 23d 1865; in it she stated under oath that she was the widow of John Anker, and that she was still a widow, &c.

The defendants requested the court to charge :—

1. That if the jury believe, on the evidence in the case, that the suit was originally brought in the name of Louisa Anker and on the allegation she was a widow at the time of bringing the suit, for the purpose of covering up a fraudulent claim for a pension from the United States, or in consequence of such a fraudulent claim having been made, and not through accident or mistake,

then plaintiff was not entitled to any amendment of the pleadings, and cannot recover here.

2. That Herman Anker having been of lawful age when he died, the mother is not entitled to recover in this action.

3. That there can be no recovery in this case for the losses or for the sufferings of the deceased, or for solace for the feelings of the living.

4. That any recovery had in this case must be strictly limited to a pecuniary compensation for a pecuniary loss, actually shown to have resulted to plaintiff from the negligence of the defendants.

The court, after stating the case, said :—

* * * " The court decline to charge as requested in the 1st point. The case is now to be tried as the parties appear on the record, precisely as if it had been so brought in the first instance.

" The court decline to charge as requested in the 2d point. The rule of law, as laid down by the Supreme Court in the case of The Pennsylvania Railroad Company *v.* Adams, 5 P. F. Smith 499, is that if there be a reasonable expectation of pecuniary advantage from a person bearing the family relation, the destruction of such expectation by negligence, occasioning the death of the party from whom it arose, will sustain the action. If, therefore, the mother had a reasonable expectation of pecuniary advantage from her son, the plaintiff is entitled to maintain the action.

" The 3d point is affirmed."

As to the 4th point :—

" The recovery had in this case must be strictly limited to a pecuniary compensation for the pecuniary loss which resulted to the plaintiff from the negligence of the defendants, by which the death of her son was occasioned. [But it is not necessary, to enable the plaintiff to recover damages for the death of her son, that the evidence should show the *precise* amount of the damages in dollars and cents.] From the nature of the case, the precise and definite amount of the damages cannot be actually shown. [But the evidence must clearly show that the plaintiff did actually sustain damages—pecuniary damages or loss; and if she did, the plaintiff is entitled to maintain the action and recover such damages as the jury may find from the evidence that she has sustained.] But, as we have already instructed the jury in answer to the defendants' 3d point, there can be no recovery for the sufferings of the deceased, or anything by way of solace for the wounded feelings of the mother."

The judge then read the 2d section of the Act of Assembly, entitled " An Act relating to railroad companies and common carriers, defining their liabilities, and authorizing them to provide means of indemnity against loss of life and personal injury," approved 4th of April, A. D. 1868, Pamph. L. 58, as follows :—

[Pennsylvania Railroad Co. *v.* Keller.]

" ' That in all actions now or hereafter instituted against common carriers or corporations owning, operating or using a railroad as a public highway, whereon steam or other motive power is used, to recover for loss and damage sustained, and arising either from personal injuries or loss of life, and for which, by law, such carrier or corporation could be held responsible, only such compensation for loss and damage shall be recovered as the evidence shall clearly prove to have been pecuniarily suffered or sustained, not exceeding, in case of personal injury, the sum of three thousand dollars, nor in case of loss of life, the sum of five thousand dollars,' " and proceeded :—

[" This act must receive a reasonable construction. It does not mean that there can be no recovery of compensation for the loss and damage sustained and arising from personal injuries or loss of life, unless the evidence clearly shows the precise amount of the loss or damage pecuniarily suffered or sustained. There can be no recovery under the act, unless the evidence shows that pecuniary loss or damage has been actually suffered or sustained. But if there be evidence of actual pecuniary loss or damage, its precise amount in dollars need not be shown in order to a recovery. For a personal injury—the loss of an arm—there may be a recovery of damages for the pain and suffering occasioned thereby, as well as compensation for the pecuniary loss. But if there could be no recovery for the pain and suffering, and the legislature should pass an act providing that, in addition to the pecuniary damages arising from the loss or injury, there might be a recovery for the pain and suffering occasioned thereby, but that only such compensation should be recovered therefor, as the evidence should clearly prove to have been pecuniarily suffered or sustained, the fair construction of such an act would be, not that the evidence must show the precise sum in dollars that would be a compensation for the pain and suffering before there could be a recovery; but if there was clear proof of the pain and suffering, pecuniary compensation might be recovered therefor, though the evidence might not show the precise sum that would be a compensation for the pain and suffering. So, under this statute, the evidence must show that the plaintiff sustained actual pecuniary loss or damage by the death of her son, in order to entitle her to recover; but it is not necessary that the evidence should show *the precise amount* of the loss or damage.

" If the evidence shows that the plaintiff sustained actual pecuniary loss by the death of her son, though the precise amount be not shown, the jury may determine the amount and make up their verdict from the evidence. It will be for you—if you are satisfied that Herman Anker was the plaintiff's son, and actually killed on the cars through the negligence of the defendants, and are also satisfied that the plaintiff had a reasonable expectation of profit from his life—to determine the damage she has sustained.] We

[Pennsylvania Railroad Co. *v.* Keller.]

have nothing to do with the application for the pension, except as it affects the credibility of the witness. The railroad company cannot set off the amount of the pension against the damages in this case; and the fact that the plaintiff improperly received the pension does not concern the defendants, and is only to be considered by the jury in reference to her credibility. [If you are satisfied that the plaintiff now tells the truth, and if you find from all the evidence that her son was killed by the negligence of the company, and that she had a reasonable expectation of pecuniary advantage from him, then you are to determine the amount of the damages. Under the Act of Assembly, it cannot exceed five thousand dollars. You ought to exercise your good sense and judgment in estimating these damages—they ought to be reasonable. It has been properly argued that the son had lost his leg, and that he had not the same ability as one who was sound; but it should also be considered that he was entitled to a pension, and he might not have been always on crutches—he might have got an artificial limb. He might have married, it is true, but he might still have assisted his mother. These are matters for the consideration of the jury. It is not true, in point of law, that a parent has no pecuniary interest in the life of a child over twenty-one years of age; for by our law the child, if of sufficient ability, is bound to support the parent when he or she becomes old and indigent."]

The verdict was for the plaintiffs for $3000.

The defendants took out a writ of error, and assigned for error, allowing the amendment in the record and declaration; the answers to the 1st and 2d points; the qualifications to the 4th point as contained in the parts of charge in brackets.

*Chapman Biddle* and *T. Cuyler*, for plaintiffs in error.—A married woman cannot sue alone: Kutz's Appeal, 4 Wright 94; Smith *v.* Smith, 9 Id. 403. At the commencement of the suit it was defective for want of proper parties. The Acts of May 4th 1852, § 2, Pamph. L. 574, April 12th 1858, Pamph. L. 243, Purd. 47 pl. 3, 4, allow amendments in cases of *mistake;* there is no evidence of mistake here, and the amendment should have been refused: Locke *v.* Daugherty, 7 Wright 88. The evidence shows that the original form of action was for a dishonest purpose. No suit was properly brought within a year; an amendment three years after the death is to be treated as a new suit, and beyond the limitation: Russell *v.* Bell, 8 Wright 54. There was no evidence of reasonable expectation of pecuniary advantage from deceased to plaintiff. The Act of 1868 (Purd. 1521, pl. 2, referred to in the charge) was to restrict the rule as to the measure of damages as laid down in Penna. Railroad *v.* McCloskey, 11 Harris 526, and fix a more precise standard, re-

quiring proof of the *actual* damage: Franklin *v.* South-East Railway Co., 3 H. & N. 211; Dalton *v.* Same, 4 C. B. 226.

*F. C. Brightly* (with whom was *F. F. Brightly*), for defendants in error.—The amendment was properly allowed: Druckenmiller *v.* Young, 3 Casey 97; Ganzer *v.* Fricke, 7 P. F. Smith 319; Wilson *v.* Savings Bank, 9 Wright 494; Cochran *v.* Arnold, 8 P. F. Smith 399; Rangler *v.* Hummel, 1 Wright 132. The plaintiff's right to damages is established by Penna. RR. *v.* Adams, 5 P. F. Smith 499; Dalton *v.* South-East Railway Co.; Franklin *v.* Same, *supra*. The parent has a right of action for the death, independently of the question of damages: Penna. Railroad *v.* Zebe, 9 Casey 329; Same *v.* Bantom, 4 P. F. Smith 495; Coakley *v.* Penna. Railroad Co., 6 Am. Law Reg. 355. The Act of 1868 is but in affirmance of the law existing before, which is compensation for actual loss: Coakley *v.* Penna. Railroad, Penna. Railroad *v.* Bantom, *supra;* Same *v.* Goodman, 12 P. F. Smith 329; Illinois Central Railroad *v.* Barron, 5 Wall. 90.

The opinion of the court was delivered, February 9th 1871, by
Thompson, C. J.—The first thing we shall notice is the complaint of error in allowing the record to be amended at a term antecedent to the trial below, by changing the names of the plaintiffs. This the Act of the 4th of May 1852 fully authorized, if made apparent to the court that there was an error in the original institution of the suit. But we will not dwell on a matter so well settled, as the right of the court to allow such an amendment as was permitted in this case, on considerations which showed that in justice it ought to be made. The authorities cited by the counsel of the defendants in error fully prove this. But we discover no exception taken when the amendment was ordered, and this is at once an answer to this matter of complaint.

Afterwards, and on the trial, the amendment was attempted to be overthrown and the plaintiffs put out of court by an appeal to the jury, occurring in this wise. Evidence was offered to show that Louisa Keller, the meritorious plaintiff, had at one time applied for a pension, as the widow of one Anker, being at the time married to Keller, and obtained the same in fraud, as is alleged, of the pension laws, and that this suit was brought in the same name to cover that fraud, and therefore she was not entitled to the amendment in the case referred to, and consequently not entitled to maintain this suit. There was a point to this effect put to the court to charge upon, but of what evidence it was predicated we know not. The learned judge refused so to charge, and told the jury that the case was to be tried as the parties appeared on the record, precisely as if it had been so brought in the first place. This was right beyond a peradventure, and the error is

17 P. F. Smith—20

[Pennsylvania Railroad Co. *v.* Keller.]

not sustained. Nor is there any error in the 2d and 4th assignments.

The 5th error assigned raises a question of the right of plaintiff, Louisa Keller, to recover for the loss occasioned by the death of her son by negligence of the company, he being over age at the time. But our learned brother charged, in answer to the point on that subject propounded, that if the family relation still existed between mother and son, at the time of the death, and there were reasonable grounds on her part to expect future pecuniary advantage from the continuance of this relation, as in the past since arriving at age, the destruction of such expectations by the negligence of the defendants in causing his death, it would sustain the action, and referred the facts in evidence to the jury. This was right, or the case of The Penna. Railroad Co. *v.* Adams, 5 P. F. Smith 499, was wrong, a conclusion which we are by no means prepared to make. This error is therefore not sustained.

The material question in the case is raised by the defendants' 4th point, and the answer thereto. The point was, "that any recovery had in this case must be strictly limited to a pecuniary compensation for a loss actually shown to have resulted from the negligence of the defendant." The learned judge agreed, and charged that any recovery in the case must be strictly limited to a pecuniary compensation for the pecuniary loss resulting to the plaintiff, but added, "it is not necessary, to enable the plaintiff to recover damages for the death of her son, that the evidence should show the precise amount in dollars and cents. From the nature of the case, the precise and definite amount of the damage cannot be actually shown. But the evidence must clearly show that the plaintiff did actually sustain damages—pecuniary damages or loss." This was the view taken by the learned judge of the 2d section of the Act of 4th April 1868, which he conceived to be required, as a reasonable interpretation of it. In this we all agree.

The construction contended for by the company, would, beyond a question, deny compensation for death by negligence in almost every conceivable case. Is it possible to become reconciled to the belief that the legislature intended, that by the terms used in the section, there lurked a repeal, by implication, of existing remedies for the greatest of all civil wrongs, the deprivation of life of husband or wife, or parent and child, by negligence? We cannot impute such an intention, unless the words will bear no other meaning. I certainly believe they do. A plain reading of them shows a purpose to declare what the courts had said by construction to be the rule, in giving compensation under the Act of 1855, for the loss of life, viz., that it was to be measured by the pecuniary value and loss thereof to the parties entitled to compensation, and thus make that rule plain and uniform. I con-

[Pennsylvania Railroad Co. *v.* Keller.]

fess that until the views of the counsel for the plaintiff in error were presented, I never suspected such a construction possible. It was natural to entertain the belief, as I did, that if the legislature meant to take away the remedial provisions of the Acts of 1851 and 1855, it would have said so, and hence I supposed the section in question was a declaratory enactment merely, and I believe so yet, notwithstanding the able and earnest argument of the counsel, that it meant more than this.   The words are : " In all actions now or hereafter instituted against common carriers or corporations, owning, operating or using a railroad as a public highway, whereon steam or other motive power is used to recover for loss or damage sustained, and arising either from personal injuries or loss of life, and for which by law such carrier or corporation could be held responsible, only such compensation for loss or damage shall be recovered, as the evidence shall clearly prove to have been pecuniarily suffered or sustained, not exceeding, in case of personal injury, the sum of three thousand dollars, nor in case of loss of life, the sum of five thousand dollars :" Annual Digest by Brightly, 1521. .

Now, it seems to me, the very limitation of the amount which may be recovered, implies that that amount may be given in a proper case ; but how such a sum could be given, in the restricted view taken of the act, I cannot see.   The act says, only such damages shall be allowed as the *evidence shall clearly prove to have been pecuniarily suffered or sustained.*   These words are exclusively in the past tense, and if so construed no damages whatever could be allowed.   No damage, under the act, could be said to have accrued to any one until the death resulted, and none can be allowed by the terms of the act but such as have been sustained by the destruction by negligence of the life, and as these words do not apply to the future, no damages at all could be given.   This view is, however, utterly unreasonable, we think, and not to be entertained for a moment.   In this way, it strikes us, it denies all damages under this act, as well as under the Acts of 1851 and 1855.

But there is another aspect of it which will result from the principle insisted upon, viz., that the test of the right to recover being the "*pecuniary damages clearly proved to have been suffered,*" it will follow that all those who from youth, old age or other circumstances, are non-producers, may become the victims of negligence without any compensation to survivors.   Nay, more, the corollary of the postulate would prevent compensation where the survivors are absolutely benefited by the death, either as gainers by a distribution of the property of the deceased, or by the riddance of a troublesome charge.   The controversies which would arise, if this were the rule, would be repugnant and offensive to the sensibilities of every person.   The law expresses no such

[Pennsylvania Railroad Co. *v.* Keller.]

idea, and we are not to give to it that operation by construction. Compensation for the loss of life was given to certain survivors by the Act of 1855. The law chose to regard it as property in a certain sense. It was to be estimated by the same standard as property, viz., its pecuniary value, not to be enhanced by any considerations of pain to the deceased, or anguish to the survivors. Life, by law, had a value for the loss of which the survivors had a right to be compensated, in view of its circumstances. In estimating it, considerations that personal exertions may ever be required of its possessor, or the possible want of capacity in such possessor, are not to be taken into account. All stand on a platform common to their positions, and the value of the loss to be compensated is to be estimated with a view thereto. None are without value in the eye of the law, and because there are difficulties in the way of determining the question of value, it is not a good reason for denying it altogether. The sound sense of the jury must ascertain the pecuniary value by which it is to be estimated from the evidence in the case, as best they may: Railroad Company *v.* Barren, 5 Wal. U. S. Sup. Ct. Rep. 90. This last case arose in Illinois on a statute somewhat similar to the one in question. There the provision is, that in every such action "for death, occasioned by negligence, the jury may give damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, not exceeding," &c. In that case (and it supports our view) it was held by the Supreme Court of the United States, that it is not necessary to the recovery that the widow and next of kin shall have had a legal claim on the deceased for support. This could only be asserted by regarding the life as property, to be compensated without regard to past earnings or capacity to earn at the time of death.

We ought to regard the Acts of 1855 and 1868 as *in pari materiâ*; they concern the same statutory rights, and neither contains what the other does, but both make a system. Together, they give a right of action, and fix a standard of compensation for the injury to be compensated. In this aspect we see utility in the section of the Act of 1868 referred to, and we escape a construction destructive of the right of action in case of death, given by the Act of 1855. We think our brother laid down the law with entire accuracy, when he held the loss must be estimated by its pecuniary value, but the evidence need not show the precise amount in dollars and cents. That was for the jury to find under the evidence.

As we see nothing in the record to correct,

The judgment is affirmed.