Milligan, J.,
delivered tbe opinion of tbe court:
This is an application to recover tbe proceeds of 68 bales of cotton, seized in 1864 by tbe United States military authorities in tbe city of Atlanta, and turned over to the treasury agents, and by them sold, and tbe proceeds paid into tbe treasury.
Tbe facts necessary to a determination of tbe rights of tbe parties are found to be as follows:
Early in tbe year 1862 tbe claimant deposited with bis father-in-law, Samuel Ebea, tbe sum of $5,010, to be by him sent, with tbe money of Mr. Ebea, to one A. I. Ansley, to be invested in raw cotton. Ebea says, in bis receipt for tbe money, “I am to have it invested on tbe best terms possible, and tbe expenses attending tbe same to be paid by each in proportion to our respective sums invested.’7
Ansley, as it appears, invested tbe money sent him, as instructed, in tbe name of Ebea; and afterwards, in tbe fall of 1862, shipped tbe cotton purchased, in Ebea’s name, from Augusta, Georgia, to Eobert I. Lowry, a merchant in Atlanta. Lowry says: “ I bad on storage in my bouse, to tbe credit of Samuel Ebea, 261 bales of cotton. I received it in tbe months of October and November, 1862; 25 bales of this cotton was sold in November, 1863, to pay taxes, storage, &c.; burnt in tbe warehouse, during tbe shelling by General Sherman’s forces, 43 bales; shipped to Gains & Co., Macon, Georgia, 125 bales, to be stored to tbe credit of Samuel Ebea.”
It thus appears, of tbe whole lot, 58 bales still remained in tbe custody of Mr. Lowry, in Atlanta, which, with five bales belonging to one Joseph E. Anderson, the witness says be turned over to Captain E. Hade and toot bis receipt in bis own name. “ Tbe cotton,” continues tbe witness, “ did not belong to me, but tbe receipt was taken in my name because I was agent for tbe parties owning tbe cotton, and expected to collect tbe money immediately from tbe government; and tbe *239 parties not being present to attend to it, it was tbougbt best to take tlie receipt in my name.”
Tbe record further discloses tbe fact tbat tbe amount of money invested in cotton by Ainsley, in tbe name of Ebea, was $12,509 80. Of tbis sum, as shown by Ehea’s receipts, $5,010 belonged to claimant.
Ebea is dead, and bis executors set up no claim in tbis court to any part of tbe proceeds of tbe sale of tbe 58 bales involved in tbis action 5 but tbis fact can give tbe claimant no additional strength. He must stand or fall on bis own merits. Ebea’s executors are not before tbis court; nor does it appear from tbis record tbat they could maintain an action for their testator’s interest here. He is shown to have resided in a State declared by tbe President to be in rebellion against tbe United States, and by tbe terms of tbe act of Congress approved June 25, 1868, such residence, if voluntary, is declared to be prima fade evidence tbat tbe party gave aid and comfort to tbe rebellion, and is therefore incapable, Avithout more evidence, of suing in tbis court, or assigning bis right of action against tbe United States to another. There is no proof in this record to rebut tbe presumption of disloyalty raised by tbe statute against Mr. Ebea, and tbe case must turn upon tbe claimant’s right to maintain tbis action in bis own name for tbe cotton seized or tbe proceeds of tbe sale thereof.
We do not think tbe facts of tbe case establish a partnership, as has1 been ingeniously insisted on by tbe special counsel for tbe defendants. At most, tbe ownership of tbe cotton before its seizure was joint, with the right of each party to control bis interest at discretion. Ordinarily, in cases of joint OAvnersbip, tbe action must be also joint; but when tbe interest is several, or, having been joint, has been severed, separate actions may properly be maintained; and in an action for damages in such a case tbe surrounding circumstances, and tbe situation of tbe parties, and tbe nature of tbe consideration, may be looked at, in order to see who is really interested, and who has sustained tbe damages, and whether such damages are joint or several, in order to determine tbe number of plaintiffs and in whom tbe right of action rests. (Cbitty on Contracts, 124; 1 Esp. Nisi Prius, 117; Hall v. Leigh, 8 Cranch, 50.)
In tbis case, as tbe record is presented to us, tbe law itself has seArered tbe interest of tbe joint owners, and denied tbe *240 right of Mr. Rhea’s executors to recover any part of the' proceeds of the cotton seized and sold. And upon reason, as well as authority, we think it would be absurd to hold that, when one joint owner is by law deprived of the right of suing jointly with the other, that such other joint owner, upon whom no legal disability rests, is also deprived of the right of action. Such a rule would be manifestly unjust, and against the settled doctrine on this subject.
The United States held the cotton, the proceeds of the sales of which is now in controversy, by the right of capture, and under the acts of Congress their title was good against both joint owners; but Congress has provided, as an act of justice to the loyal people residing in the insurrectionary States, that u any iierson claiming to have been the owner of any such abandoned or captured property may, at any time within two years after the suppression of the rebellion, prefer his claim to the proceeds thereof in the Court of Claims; and on proof, to the satisfaction of said court, of his ownership of said property, of his right to the proceeds thereof, and that he has never given aid or comfort to the present rebellion, to recover the residue of such proceeds,”, after deducting all proper costs and charges.
The distinct object of the investment, and the amount of interest owned therein, both by Mr.' Rhea and the claimant, prior to the seizure, having been, together with the loyalty of the plaintiff, so fully proven, we have no hesitation in holding, under the equitable powers of this court, that he is justly entitled to recover of the proceeds of the sales of 58 bales of cotton a sum in proportion to the amount of his funds invested therein, which we find to be $8,360.
We have not thought it necessary formally to notice in this opinion the exceptions taken to the items of evidence offered by the plaintiff, as we find the case in all respects fully made out by the testimony, to which there are no exceptions.
Judgment will be entered for $8,360.